GAMEL *v.* THOMPSON.

4-7288                                    178 S. W. 2d 674

Opinion delivered March 13, 1944.

*Ford Smith* and *Ross Mathis,* for appellant.

*W. J. Dungan,* for appellee.

SMITH, J.   The record in this case is voluminous and confusing, as it involves many transactions and would

be difficult to understand, even with an introduction to the *dramatis personae,* and impossible to understand otherwise. We, therefore, introduce them.

E. E. Jefferies is the owner of the land on which the crop was grown which forms the subject-matter of the litigation. S. Clyde Gamel, who may be called the leading actor, rented Jefferies' land for the year 1941 and grew the crops thereon. One of the few undisputed facts in the case is, that Gamel agreed to pay $860 rent, but did not pay it.

M. D. Thompson & Son is a mercantile partnership, managed and operated by Vance M. Thompson, one of the partners, and will hereinafter be referred to as Thompson. This partnership was engaged in farming, and furnished money and supplies to other farmers through its mercantile establishment. Thompson operated a public cotton gin, and bought both cotton and cottonseed from the patrons of the gin and from the customers at the store. Gamel was one of those "furnished," as that transaction is called in the cotton country, by Thompson during and for some years prior to 1941, and had, prior to 1941, ginned his cotton with Thompson.

W. J. Pohnka operates a cotton gin in competition with Thompson. E. T. Ramsey, who is the sheriff of the county, is a brother-in-law of Gamel. The Commodity Credit Corporation is a government supervised institution, which made loans on cotton to the growers thereof. Austin Bros. are cotton buyers, with offices in Memphis, Tenn. The Bank of McCrory is a banking institution at McCrory, Arkansas.

Thompson, for a number of years, furnished Gamel and took chattel-mortgages to secure these advances, but no mortgage was given in 1941.

From time to time this account was closed with a note to Thompson from Gamel, and the major portion of the record before us is devoted to the large number of transactions between Thompson and Gamel which make up this account.

When Gamel began gathering his 1941 cotton crop, he carried it to Pohnka's gin, where 22 bales of cotton were ginned and sold to Pohnka, who paid the market price therefor, less the ginning and picking charges. Pohnka testified that Gamel told him that he had more than enough cotton in the field to pay the rent, and that the rent would be paid from the proceeds of the sale of the cotton remaining in the field.

Thompson filed suit against Gamel, in which he alleged that at the end of 1940 Gamel was indebted to him in the sum of $1,262.83, which was increased by further advances, during 1941, to the total sum of $2,147.01. An affidavit for a general attachment was filed, in which it was alleged that Thompson was entitled to a judgment for the sum last named, and that Gamel had sold a portion, and was about to sell the remainder, of his property, with the fraudulent intent to cheat, hinder and delay his creditors. A general attachment was levied upon the ungathered cotton, corn and hay grown by Gamel on Jefferies' land in 1941.

Pohnka intervened in this suit, and filed a cross-complaint against Thompson alleging that he had an interest in the ungathered crops, by virtue of Gamel's agreement with him to pay rents out of this portion of the crop. Ramsey also intervened and alleged that he had a mortgage on the crop, given him by Gamel to secure a loan, on which a balance of $400 was due.

Ramsey, who is the sheriff of the county, served the attachment through a deputy. He was directed by the court to gather and sell the cotton and the feed crops. He gathered and sold 13 bales, which was all the cotton in the field except two bales which Gamel picked and sold. The sheriff also sold at public sale the feed crops and made a report of the net proceeds of these sales, to which further reference will be later made.

Gamel filed an answer denying that any grounds for attachment existed, and denied also any indebtedness to Thompson. It was admitted that Gamel had been largely indebted to Thompson prior to 1936, but it was

alleged that this indebtedness had been discharged by the surrender and delivery to Thompson, by Gamel, of a lot of personal property covered by a chattel mortgage to Thompson of the appraised and agreed value of $1,357.50, without foreclosure of the mortgage. By way of cross-complaint, Gamel alleged that in 1938 Thompson, as his agent, procured from the Commodity Credit Corporation loans on 39 bales of cotton, these loans being made through the Bank of McCrory, as a member of the Federal Reserve system. The proceeds of these loans were credited to Gamel's account by Thompson. The McCrory bank sent the notes, evidencing the loan, and the loan agreement, to the Federal Reserve Bank at Memphis, together with warehouse receipts, all of which were returned to the bank on July 9, 1939, at the request of Thompson, and were surrendered to Thompson, of which action Gamel was not advised until after the filing of suit by Thompson against him.

It was further alleged that Thompson converted this cotton to the account of the firm by selling Gamel's equity to Austin Bros., cotton buyers in Memphis, without Gamel's knowledge or consent; that this cotton had a value of $25 per bale more than the amount borrowed on it, cotton having advanced from about 9c per pound, when the loan was made, to about 18c or 19c per pound when Gamel directed the bank to sell in September, 1941. Gamel was then advised that the cotton had long since been sold. Judgment against the bank was prayed, which was not rendered, but we think Gamel is entitled to a credit on his account with Thompson for this increase in the value of the cotton, as it had been sold without his knowledge or consent.

After filing of this pleading by Gamel, Thompson filed an amended complaint, in which it was alleged that Gamel was indebted to Thompson in the sum of $6,458.77, and in the decree, from which is this appeal, judgment was rendered in favor of Thompson against Gamel for that sum. Thompson explains this increase in his demand by saying that it is the balance due on certain notes given Thompson by Gamel, which had not been carried into Gamel's account.

The larger part of the voluminous record in this case is devoted to this account, and scores of transactions are involved, which extended over a period of many years. Included in this account are certain notes to the order of Thompson, signed by Gamel, which, as explained, accounts for the increased sum for which judgment was prayed. It is insisted by Gamel that these notes were paid or, if not, that they are barred by the statute of limitations, the applicability of that statute being dependent upon the authority of Thompson to credit certain payments on these notes.

A review of these transactions would require an opinion of interminable length and would, we think, serve no useful purpose. Suffice it to say, that we do not think Thompson has proved the debt claimed in the amended complaint. Indeed, we think the debt, after credit on account of the Commodity Credit Corporation note is given, is no greater than the sum paid Thompson under the directions of the decree from which is this appeal, from the proceeds of the sale of cotton and feed crops attached by Thompson. Now, it is said in the brief of Thompson that a deficiency judgment against Gamel is regarded as without value, for the reason that it cannot be collected, but, even so, Gamel is entitled to be relieved of a judgment against him for any amount in excess of his actual debt to Thompson, and this deficiency judgment is, therefore, reversed, and the cost of this appeal will be assessed against Thompson. All other costs will be assessed against Gamel. We think this should be done because the attachment was properly sustained on the ground that Gamel was disposing of his property with the intent to defeat his creditors.

While this Thompson case was being developed for submission, another case was on the way to submission. Three days after the Thompson suit was filed, Jefferies brought suit for his rent, the amount of which no one questions, and he filed an affidavit for a specific attachment against 22 bales of cotton, which were described by their gin numbers, as having been ginned at Pohnka's gin. It was averred that Gamel had sold a portion of

this cotton to Pohnka, and had contracted to sell him the remainder without paying the rent. The attachment in Jefferies' case was levied upon 16 bales of the described cotton. It appears that at the time the attachment was levied in the Jefferies case, Pohnka had bought from Gamel the 22 bales of coton, and had shipped out all except the 16 bales which were attached. Of the 16 bales attached in the Jefferies case, nine bales were taken from the railroad car in which it had been loaded for shipment. The remaining seven bales were in the warehouse, and Pohnka had and still has the warehouse receipts therefor.

Interventions and cross-complaints were filed by Pohnka and Ramsey in the Jefferies case, in which they prayed the same relief prayed in the Thompson case.

Motions were made, and not resisted, to transfer both cases to the chancery court, where, by consent, they were consolidated and tried together.

Ramsey, as sheriff, was appointed receiver, and the last of numerous pleadings filed in this case is a final report by Ramsey. In this report it was recited that the receiver had paid Thompson the net proceeds of the crops attached in the Thompson case, amounting to $1,380.48. The receiver had been directed to sell the 16 bales of cotton attached in the Jefferies case, but he reported he had been unable to comply with this order in its entirety, for the reason that Pohnka still has possession of the warehouse receipts for the cotton there attached, and refused to surrender these receipts. These bales are described by Pohnka's gin number and are a portion of the cotton described in Jefferies' affidavit for a specific attachment.

The decree from which is this appeal dismissed as being without equity the suit by Gamel against the bank, and that finding is affirmed. It sustained the attachment in both the Thompson and Jefferies cases, and rendered judgment for Thompson for $6,458.77, which judgment we reverse for the reason hereinabove stated, that Thompson has received from the sheriff as proceeds of

the sale of the crops attached in that case, a sum equal to the debt due Thompson by Gamel.

We think the attachment in the Jefferies case was properly sustained, and Jefferies' right to a judgment for his rent is not questioned. Jefferies did not attempt, within six months, or at all, to enforce his lien against any part of the crop, except that ginned by Pohnka, and his lien is sustained against the cotton which he attached, including the cotton in the warehouse, receipts for which are held by Pohnka, who is directed to deliver these receïpts to the sheriff. Upon receiving the warehouse receipts, the sheriff will sell this cotton as directed by the decree. If Pohnka has sold this cotton, judgment will be rendered against him for its value.

From the money on hand and from the proceeds of the sale of the warehouse cotton, the sheriff will make the following distribution. He will first pay Jefferies the rent due him, as Jefferies has a superior lien. He will next pay himself, as mortgagee, the balance due on the debt secured by the mortgage. He will not pay Thompson any additional amount. If any sum remains after paying Ramsey, he will pay the excess to Pohnka, who has already bought and paid for this cotton, but, as appears from what has already been said, he purchased from a man (Gamel) who had no right to sell, and who sold subject to the liens which we here order to be enforced. If this excess is insufficient to reimburse Pohnka for the money paid Gamel for the cotton purchased from him, Pohnka will be entitled to a judgment against Gamel for the deficiency, to be ascertained on the remand of the cause, and the costs of this case, except the cost of this appeal, which we assessed against Thompson, will be assessed against Gamel.

The cause will be remanded for further proceedings in conformity with this opinion.